UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT L. FRANKS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-cv-506 |
| | § | |
| CHEVRON CORPORATION, CHEVRON | § | |
| USA, INC., SEACOR MARINE LLC and | § | |
| SEACOR OFFSHORE, INC. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is Defendant, Chevron U.S.A., Inc.'s ("Chevron") Motion for Summary Judgment (dkt. #29). After considering the motion, response, and applicable law, the court is of the opinion that the motion should be DENIED.

### Facts

Plaintiff, Robert Franks, was employed by Danos & Curole ("Danos") when he was injured on December 19, 2005. Chevron contracted with Danos to provide production and maintenance services for its High Island platforms located on the outer Continental Shelf off the coast of Texas. On the date of the accident, Plaintiff, the production operator, was instructed by Jim McGinn, Chevron's lead operator, to transfer down to the M/V DEAN ANDREW, owned by Seacor, to rig up a container on the vessel in order to offload it to the platform. The container was to be used on the Chevron platform as a toolbox/storage facility. Plaintiff climbed atop the container and successfully attached the sling to the container and attached it to the crane. After attaching the container to the crane, Plaintiff attempted to climb down when the water pushed the boat up and Plaintiff slipped off the container falling to the deck of the vessel, approximately 8–10 feet down. Plaintiff hit his chin on the container on the way down and landed roughly on his left leg. Plaintiff tried to walk it off, but felt serious pain in his legs, hip, neck, and back. Plaintiff asserts that the

Chevron supervisor negligently ordered him to board the Seacor vessel in rough seas to rig a container that was not "pre-slung" in accordance with Chevron's own policy.

In its motion for summary judgment, Chevron argues Texas substantive law should apply to this case pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. § 1331, *et seq.* Specifically, Chevron contends Plaintiff's claims of negligence are governed by the Texas premises liability statute in Texas Civil Practices and Remedies Code, Chapter 95, and that his claims should be dismissed as a matter of law because Chevron did not retain the requisite control over its independent contractor's work and did not have actual knowledge of the danger such that it failed to warn Plaintiff of the dangerous condition. Alternatively, Chevron claims that should the court find that OCSLA does not apply, then Plaintiff's negligence claims are still precluded under federal maritime law because it did not retain control over Plaintiff's work as an independent contractor.

Plaintiff in turn argues Chevron's motion should be denied because his claims are purely negligence claims which have nothing to do with premises liability, and that general maritime law should apply instead of OCSLA because the incident occurred aboard a maritime vessel. Plaintiff maintains that even if OCSLA applies, a fact issue exists as to whether Chevron was actually in control of the Plaintiff's work and had actual knowledge of the danger involved in ordering Plaintiff to rig up the container.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Christopher Village L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex*., 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

   The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id*. at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

   When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th

Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## Discussion

**I.     Does OCSLA Apply?**

The first issue is whether general maritime law applies or Texas substantive law as surrogate federal law under OCSLA.[1] OCSLA provides that courts should apply the law of the adjacent state as surrogate federal law to the extent that it is not inconsistent with federal laws. *Id.* § 1333(a)(2)(A); *Rodrigue v. Aetna Cas. & Surety Co.*, 395 U.S. 352 (1969).  For adjacent state law to apply under OCSLA, three elements must be satisfied: (1) the controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabead, or artificial structures permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law. *Union Tex. Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043, 1047 (5th Cir. 1990).  The court will address each element in turn.

**A.     OCSLA Situs**

The parties do not appear to dispute that High Island 563 A Baker, the Chevron platform to which Plaintiff was assigned to work on the date of his injury, is an OCSLA platform located on

---

[1] OCSLA provides in relevant part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(2)(A).

4

the continental shelf off the Texas coast. Fixed drilling platforms constitute "artificial islands" under OCSLA. *Rodgrigue*, 395 U.S. at 363; *Hollier v. Union Tex. Petroleum Corp.*, 972 F.2d 662, 664 (5th Cir. 1992). However, the parties dispute whether the platform is the relevant situs because Plaintiff was injured while aboard the Seacor vessel. The Plaintiff argues OCSLA is inapplicable because he was not injured on the platform, however, the Fifth Circuit has refused to interpret the situs rule with such rigidity. Rather the situs rule will be satisfied if, at the time of the injury, the worker was in physical contact with the platform or some appurtenance thereto. *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1527 (5th Cir. 1996).

In *Hollier*, for instance, the decedent was assigned by his employer PPI to test a well located on a fixed platform owned by Union Texas. *Hollier*, 972 F.2d at 663. He slept and ate on a crew boat adjacent to the platform. *Id.* at 664. While crossing from the crew boat to the platform, he slipped between the boat and platform, was crushed and died. *Id.* The crew boat was considered to be a vessel and not an artificial island. *Id.* However, the court found for purposes of the OCSLA situs rule that "Hollier was in physical contact with the platform at the time of his injury." *Id.* at 665. Similarly, in *Hodgen*, a platform worker was required to swing from a rope to transfer from a boat onto the platform to take meter readings. *Hodgen*, 87 F.3d at 1516. When Hodgen attempted to swing back to the boat from the platform, the waves swelled causing the boat to rise. Hodgen hit the deck hard severely injuring his spinal cord. *Id.* The Fifth Circuit found Hodgen was in "physical contact with the rope, a portion of the platform, at the time of his unfortunate landing on the [boat]." *Id.* at 1527. The court determined even if Hodgen's injuries were caused by hitting the boat (i.e his injuries occurred on the boat), "we would still find OCSLA situs present." *Id.* In the instant case, the court finds sufficient similarity between these cases and the Plaintiff's situation to conclude that

Plaintiff was injured on an OCSLA situs. Plaintiff was physically in contact with the platform via the container, which was connected to the platform's crane for the purpose of offloading that container onto the platform from the vessel. Therefore, the first element is satisfied.

### B.    Federal Maritime Law

Next for state law to apply under OCSLA, the court must determine if federal maritime law applies of its own force. Specifically, to give rise to a tort claim in admiralty, an incident must satisfy both a maritime location and a connection to traditional maritime activity requirement. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 351–52 (5th Cir. 1999). In order to satisfy the maritime location requirement, a party must demonstrate that the tort occurred on navigable water or, if the injury was suffered on land, the injury must have been caused by a vessel on navigable water. *Id.* The connection test requires a two-part inquiry: (1) determining whether the general features of the type of accident involved has a potentially disruptive impact on maritime commerce, and (2) determining whether the general character of the activity giving rise to the incident shows a "substantial relationship to traditional maritime activity." *Id.*

There can be no dispute that Plaintiff's injury occurred on navigable waters, however, a closer inquiry is required to determine if this type of accident has a sufficient maritime connection for federal admiralty law to apply of its own force.[2] The relevant inquiry is whether the allegedly tortious activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539–40.

---

[2] The court finds the second prong of the connection test cannot be satisfied; therefore, the court will not address the first prong.

"Admiralty has traditionally been concerned with the protection of seamen injured in the course of service to their vessel." *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 130 (5th Cir. 1988). Plaintiff alleges "Chevron [was] negligent because (1) it accepted cargo that was not pre-slung in direct contravention of its own policy, and (2) ordered Plaintiff to board a vessel in rough seas to rig the cargo for onloading."[3] Therefore, the activity giving rise to Plaintiff's accident was offloading of a storage container for the purpose of modifying or improving a fixed offshore drilling platform. This type of employment in pursuit of modifying a fixed offshore platform bears no significant relation to traditional maritime activity. *Hufnagel*, 182 F.3d at 352. *See also Herb's Welding, Inc. v. Gray*, 470 U.S. 414 (1985) (finding offshore platform worker not engaged in maritime employment); *Rodrigue v. Aetna Cas. & Surety Co.*, 395 U.S. 352, 366 (1969) (finding within OCSLA's legislative history "that Congress decided that these artificial islands, though surrounded by the high seas, were not themselves to be considered within maritime jurisdiction"); *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 272-276 (5th Cir.1974) (holding platform worker's death, which occurred as a result of an explosion on a platform, bore no significant relation to maritime law, despite fact that death occurred while worker was actually located on vessel in navigable waters). The tortious activity Plaintiff complains of occurred strictly within the context of his work on the platform, which was primarily in furtherance of mineral production on the shelf. Plaintiff did not perform the type of quintessential maritime work contemplated by admiralty law, but rather his work and presence aboard the vessel at the time of his accident was only incidental to his platform-related work. Consequently, federal admiralty law is not applicable because the activities involved bore no significant relationship to traditional maritime activity.

---

[3] Pl.'s Resp. (dkt. #33), p. 3.

7

### C.     Inconsistent State Law

The court finds that the applicable Texas substantive law is not inconsistent with federal law so as to preclude the application of OCSLA.  The Fifth Circuit has indicated that Chapter 95 of the Texas Civil Practice and Remedies Code does not conflict with federal law.  In *Arsement*, although it was undisputed that OCSLA applied, the Fifth Circuit upheld the application of Chapter 95 in the context of a negligence claim by an injured offshore platform worker. *Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238 (5th Cir. 2005); *Credeur v. MJ Oil, Inc.,* 123 Fed. Appx. 585 (5th Cir. 2004); *Jones v. Apache Corp.*, 2007 WL 656268 (S.D. Tex. 2007); *Nagle v. GOM Shelf, LLC*, 2005 WL 1515439 (S.D. Tex. 2005).  Because under OCSLA, the law of the adjacent state only applies if the state's law is not in conflict with federal law, the various cases cited above could not have applied Chapter 95 without an implicit finding that it did not conflict with federal law.

## II.     Does Texas Premises Liability Statute Apply?

OCSLA claims incorporate state law as federal "surrogate" law. *Hodgen v. Forest Oil Corp.,* 87 F.3d 1512, 1528 (5th Cir. 1996).  Because the court has determined that OCSLA applies, the court must now consider whether the specialized Texas premises liability statute applies or if Plaintiff has only alleged an ordinary common-law negligence claim.  Entitled "Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery," the Texas Civil Practice and Remedies Code Chapter 95 provides the exclusive remedy for claims of negligence against property owners by independent contractors. TEX. CIV. PRAC. & REM. CODE § 95.001, *et seq*.; *see Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 88 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (holding when Chapter 95 is applicable, this is plaintiff's "exclusive remedy" and "precludes common-law negligence liability"). Chapter 95 specifies that it "applies only to a claim": (1) against

a property owner, . . . for personal injury, . . . to . . . an employee of a contractor or subcontractor; and (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement. *Id.* § 95.002(1)-(2). However, a property owner will not be liable for negligence claims unless: (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress and receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death or property damage and failed to adequately warn. *Id.* § 95.003(1)-(2). Both conditions of section 95.003 must be met before liability will be imposed upon the property owner. *Kelly v. LIN Television*, 27 S.W.3d 564, 567 (Tex.App.–Eastland 2000, pet. denied).

The Plaintiff's argument is twofold; he argues Chapter 95 does not apply based on the location of the incident and the type of negligence involved. Specifically, Plaintiff asserts that even if OCSLA applies, the Texas premises liability statute does not apply because he was not injured on the premises of Chevron's platform and the type of negligence he complains of has nothing to do with the condition or use of the platform.

The Fifth Circuit's opinion in *Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238 (5th Cir. 2005) is instructive as to Plaintiff's arguments. In *Arsement*, the injured platform worker was an employee of the independent contractor, who Spinnaker hired to refurbish the platform. *Id.* at 242. On his second day working on the platform, Arsement was injured during the installation of a pre-fabricated sump deck. *Id.* The sump deck was brought to the platform's location and was placed on a jack-up vessel alongside the platform. *Id.* Two different plans were devised to install the sump deck onto the platform. After choosing Plan B, Arsement's supervisor was to operate the crane to

try to lower the sump deck onto the platform and designated Arsement to be the signalman. *Id.* As the sump deck was lowered, it became unstable and threatened to hit and sever an ESD line, which would have shut down the entire platform. *Id.* at 243. To try and steady the sump deck, Arsement reached his foot out over the handrail and used it to push the sump deck out of the way. *Id.* When the crane began to lower the sump deck again, his foot was caught between the crane block and the handrail and was injured. *Id.*

Arsement claimed the platform owner, in addition to others involved, was negligent for choosing an unsafe plan to install the sump deck. *Id.* Arsement argued that Chapter 95 did not apply to his claim "because Spinnaker provided an 'unsafe workplan,' not the unsafe workplace necessary for a Chapter 95 premises liability claim." *Id.* at 249. The Fifth Circuit rejected that argument and found that Chapter 95 applied to both premises defect and negligent activity claims, and Arsement's fell under the latter. *Id.* ("Thus, Chapter 95 applies to premises defect claims ("the condition ... of an improvement to real property") and negligent activity claims ("use of an improvement to real property") like the one presented by Arsement.") (citations omitted). Chapter 95 was found to apply based on Arsement's claim that the supervisor was negligent for choosing and carrying out an unsafe workplan. Plaintiff's claim in the instant case is the same type of complaint, i.e. the supervisor was negligent for ordering him to rig up the container in rough waters. Despite Plaintiff's attempt to characterize his claims as ordinary negligence, he has actually alleged a negligent activity claim, which is covered by Chapter 95.

Plaintiff's location argument, likewise, does not convince the court that Chapter 95 should not apply. Accepting Plaintiff's argument that his claim is not a premises liability claim because he was injured on the Seacor vessel would require a hyper-technical application of the statute and

would undermine the legislative intent of providing greater protection for property owners against independent contractor's negligence claims. *Id.* at 245 ("[T]he Texas legislature enacted Chapter 95 to provide greater protection for property owners against [premises defect and negligent activity] claims."); *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 202 (Tex. App.–Houston [1st Dist.] 2000, pet. denied) (reviewing the legislative history of Chapter 95 and determining "the statute [ ] appl[ies] to injuries related to the contractor's work"). Although the Plaintiff was "fortuitously positioned" on the vessel at the time of his accident, he was similar to all the other plaintiffs in cases applying Chapter 95 in that he was injured while in the course of modifying the improvement, that is adding a storage container to the platform. *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 274 (5th Cir. 1974). The nature of offshore drilling platforms, because of their size and location, make them ill-equipped for having on premises all the necessary equipment. Therefore, transportation vessels are necessary for transporting people and equipment back and forth from offshore platforms. *See Arsement*, 400 F.3d at 242 (requiring a jack-up vessel to hold the sump deck while the crane attempted to lift it onto the platform). For purposes of premises liability, the vessel was merely an extension of the premises. A premises which the Plaintiff was required, as a part of job duties, to perform work on.

In sum, it is undisputed that Chevron is the property owner of the platform on which Plaintiff was working as an employee of an independent contractor. Plaintiff was injured in the course of his work attempting to modify the platform by adding a storage facility. Therefore, the court finds that Chapter 95 applies to Plaintiff's negligence claims against Chevron.

**III.     Application of Texas Premises Liability Statute to the Facts**

Chapter 95 protects property owners unless three criteria are satisfied. First, for liability, the

property owner must exercise or retain some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports. § 95.003(1). Also, the property owner must have "actual knowledge of the danger or condition resulting in the personal injury." § 95.003 (2). Lastly, it must have failed to adequately warn of this danger. *Id.*

Control can be maintained by either contract or actual exercise of control. *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). The Master Service Agreement between Chevron and Danos forecloses the argument that Chevron maintained contractual control.[4] In exercising actual control, the control "must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999). A right of control is contingent upon the ability to control the means, methods, or details of the independent contractor's work. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). Under Chapter 95, the knowledge requirement has been increased from Texas common law which only required the plaintiff to prove constructive knowledge. *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.–Houston [14th Dist.] 2004, pet. denied). The plaintiff must now show that defendant had *actual* knowledge of the dangerous condition and that the defendant failed to adequately warn the plaintiff of the condition. *Id.*

The summary judgment evidence creates a fact issue on all three of these elements. McGinn, the Chevron supervisor, took the call from the Seacor vessel about accepting the cargo outside of

---

[4] Dkt. # 29, ex. 1 ("CONTRACTOR shall perform the services as an independent contractor and not as an employee of COMPANY. . .").

the presence of Plaintiff.[5] Plaintiff overheard McGinn on the phone saying something to the effect "if you're going to do it, you need to do it now," indicating the seas were getting rough.[6] Before beginning the operation, an alarm went off and Plaintiff took about 10-15 minutes to resolve that problem.[7] When he returned, McGinn informed him that while he was gone, he conducted a job safety analysis.[8] He and Plaintiff were the only two involved in offloading the container on Chevron's side of the operation, with McGinn in the supervisory role.[9] McGinn ordered Plaintiff to rig up the cargo,[10] he operated the crane,[11] and he controlled the materials that were used by Plaintiff.[12] He never told Plaintiff how to do his work, but both parties admit that that was unnecessary because Plaintiff knew how to rig up cargo and had done so numerous times in the past.[13] Although McGinn did not give operative detailed instructions, he was directly involved in the carrying out of the operation by being in control of the crane. McGinn had decision-making authority regarding the timing of the operation. A fact issue also exists that McGinn knew the waters were choppy and the conditions may be dangerous based on the phone conversation with the

---

[5] Dkt. # 33, Dep. of Robert Franks, p. 33.

[6] *Id.*

[7] *Id.* at 35.

[8] *Id.* at 36.

[9] *Id.* at 30

[10] *Id.* at p. 66.

[11] *Id.* at p. 132.

[12] *Id.* at 46.

[13] *Id.* at 8.

vessel. Having considered the summary judgment evidence viewed in a light most favorable to the Plaintiff, the court finds there are genuine issues of material fact as to Chevron's control, knowledge, and failure to warn.

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (dkt. #29) is DENIED. As the court has denied Defendant's motion for summary judgment, the court finds it unnecessary to consider Plaintiff's sur-reply. Therefore, the court will DENY Plaintiff's Motion for Leave to File Sur-Reply (dkt. #45) as moot.

It is so ORDERED.

SIGNED this 13th day of August, 2007.

_John D. Rainey_
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE